STATE OF MISSOURI at the relation of YALE UNIVERSITY, a Corporation, Relator, v. EUGENE J. SARTORIUS, Judge of the Circuit Court, City of St. Louis, Division No. 3.—No. 37871.

STATE OF MISSOURI at the relation of YALE UNIVERSITY, a Corporation, Relator, v. EUGENE J. SARTORIUS, Judge of the Circuit Court, City of St. Louis, Division No. 3.—No. 37872.—163 S. W. (2d) 981.

Court en Banc, July 28, 1942.

1040

*Jacob M. Lashly, John O. Hichew* and *Lashly, Lashly, Miller & Clifford* for relator.

*William M. Fitch* for respondent.

1046

LEEDY, J.—These two cases, although separately abstracted and briefed, were argued together, and may be disposed of in one opinion. They constitute parts of a series of five original proceedings in mandamus (all concurrently decided herewith), involving the question of the right of appeal from certain judgments and decrees of that division of the Circuit Court of the City of St. Louis presided over by the respondent judge, in a cause numbered 23,694-C, entitled "St. Louis Union Trust Company, a corporation, and Allen C. Orrick, Successor Trustees under deed dated June 12, 1885, of Thomas T. Gantt and David Ranken, Trustees, Plaintiffs, v. Charles H. Clarke

(and 162 other named defendants); the Unknown Consorts, Heirs, Devisees, Donees, Alienees, and immediate, mesne or remote, voluntary or involuntary Grantees of Hazlett Kyle Campbell; the Unknown Consorts, Heirs, Devisees, Donees, Alienees and immediate, mesne or remote, voluntary or involuntary Grantees of Robert Campbell; and the Unknown Consorts, Heirs, Devisees, Donees, Alienees and immediate, mesne or remote, voluntary or involuntary Grantees of Virginia J. Campbell, Defendants.''

The facts set forth under the caption ''General Facts'' are applicable to this, and all of the companion cases, and by reference will be made a part of the opinions in the other cases:

### GENERAL FACTS

The suit above referred to was instituted, apparently within a matter of hours, following the death of Hazlett Kyle Campbell (hereinafter, for brevity, referred to as Hazlett), which occurred March 27, 1938. He died intestate in the City of St. Louis, the last surviving member of his immediate family. He was one of the beneficiaries of a trust estate created by his parents in 1877. Said trust, and more particularly the share or portion thereof allotted to Hazlett under subsequent conveyances in 1885, with the increment, is the subject matter of the suit in which the appeals are sought.

Robert Campbell, Hazlett's father, immigrated from his home in County Tyrone, Northern Ireland, and became an early day resident of St. Louis. He amassed a fortune in the Indian fur trade in the Northwest. Robert and his wife, Virginia J., were also the parents of Hugh and James A., who were, respectively, elder and younger brothers of Hazlett. On February 14, 1877, the parents (Robert being then in advanced years), by an instrument designated as a ''Deed of Settlement,'' conveyed to Thomas T. Gantt and David Ranken, as trustees, all of the property belonging to them, or either of them, upon trusts which were defined in said deed. It provided that the trust property should be held after the death of Robert for the use and benefit of Virginia, the wife, and her said children, Hugh, James and Hazlett, until March 16, 1885 (when James, the youngest, would attain his majority), at which time a division and distribution thereof should be made. Robert died in 1879, and Virginia died intestate in 1882; Hugh, James and Hazlett survived their parents.

Virginia having died prior to the time fixed by said instrument for a division and distribution of the trust property, the said property was divided into three parts, which were awarded by lot to Hugh, Hazlett and James, respectively. The shares awarded to Hugh and James were conveyed to them directly; Hazlett's share of the real estate was, at the direction of Hugh (purportedly acting as the survivor of Virginia and himself, and under the powers contained in the deed of 1877) conveyed by the trustees, Gantt and Ranken, by deed

dated June 12, 1885, to James A. Campbell, as trustee, with provisions for application of the income to the support and maintenance of Hazlett during his lifetime; for distributions of the principal to Hazlett, if in the opinion of the trustee, Hazlett's condition justified such course; for the application of income to the support and maintenance of Hazlett's family, if he had one, and for distribution of the undistributed remainder, upon Hazlett's death, "to the heirs of said Hazlett as the same may exist by law at the time of his said Hazlett's death according to their right in fee simple and absolutely." Hazlett's share of the personalty was also transferred to James A. Campbell, as trustee, who executed a declaration of trust dated July 6, 1885, declaring that such personalty was held according to the terms of the aforesaid deed of June 12, 1885.

James A. Campbell, the trustee under said conveyances, died in 1890. He was succeeded by his brother, Hugh, who resigned in 1926, at which time the St. Louis Union Trust Company and Allen C. Orrick were duly appointed as his successors by the Circuit Court of the City of St. Louis. Hugh died in 1931, and Hazlett died March 27, 1938. None of said brothers ever married, and none of them had any children, natural born or adopted.

Hazlett had been formally adjudged incompetent some years before his death, to-wit, on September 8, 1931, at which time Anton Schuler was appointed guardian. At the time of the death of Hazlett in 1938, the value of the trust property held by said successor trustees was in excess of One Million Eight Hundred Thousand Dollars ($1,800,000.-00). More than 1200 persons appeared in the case below, claiming to be heirs of Hazlett, the last survivor of his immediate family. It seems that 1085 of the claimants were determined not to be heirs, and 161 were found and adjudged to be among his heirs. They were scattered throughout the United States, Canada, England, Ireland, Scotland and Australia.

In their amended petition in the suit below the trustees alleged the facts concerning the trust instruments, concerning the death of Hazlett and the prior deaths of the members of his immediate family, and concerning the property held by them as successor trustees at the death of Hazlett. It further alleged that they were confronted with the immediate duty of complying with the terms of the deed of June 12, 1885, with respect to the distribution of the trust property and that, in the performance of such duty, they needed and required the aid of the court as a court of equity (a) "to instruct them as to their title, powers and duties in respect of the trust estate pending ascertainment of the the persons entitled to distribution thereof and actual distribution thereof; (b) to construe said deeds of February 14, 1877, and June 12, 1885, and determine and declare the validity of said conveyances and the nature of the titles that were thereby vested in the Trustees and beneficiaries thereunder, respectively; (c) to con-

strue said deed of June 12, 1885, and determine and declare the character of the interests passing by virtue thereof to the heirs of said Hazlett Kyle Campbell in respect to whether or not such interests were, or were not, contingent remainders which became vested at the death of said Hazlett Kyle Campbell; and (d) to determine and declare the identity of the persons to whom and the proportions in which the corpus and also the undistributed net income of said trust estate, is to be distributed according to the terms of said trust deed dated June 12, 1885.'' Said petition also invoked the jurisdiction of the court to determine and judicially declare the respective titles and interests of the plaintiffs, and of each and all of the defendants, and of the unknown claimants, in and to the subject matter of the suit.

*Particular facts applicable to cause No. 37,871:* On December 22, 1938, relator Yale University was granted leave to intervene in said cause, and on the same day it filed answer as intervenor-defendant, wherein it claimed one-half of the entire trust estate on the theory that the deed of February 14, 1877, did not vest in Hazlett an inheritable interest in any of the property therein described; that the reversionary interest in the real and personal property in the possession of plaintiff trustees remained in Robert and Virginia Campbell, and upon their deaths passed to their heirs at law, and subsequently, by devises and bequests, an undivided two-thirds interest in three-fourths of said property passed to said intervenor-defendant under the will of Hugh Campbell. The prayer was that two-thirds of three-fourths in value of all said property be impressed with a trust for the use and benefit of Yale University, and that the same be segregated and transferred to it, and for such other and further relief as the court might deem just and appropriate.

Hearings on the merits as to the claim of Yale University were conducted from time to time between October 23, 1939 and May 12, 1941, on which latter date the cause was taken as submitted by the court. Thereafter on June 19, 1941, and at the June Term of said court, respondent judge made and entered a judgment and decree which dismissed with prejudice the intervening answer of relator herein, Yale University, and denied its claim. Motion for new trial was timely filed, and on July 7, 1941, said motion was overruled. Thereafter, and in due time, an affidavit for appeal in proper form was filed on behalf of relator herein, and the statutory docket fee of $10.00 was paid, and on September 5, 1941, and at the judgment term, respondent judge made and entered an order denying relator its said appeal.

In cause No. 37,871, which will be treated first, relator seeks, by mandamus, to compel the respondent to allow an appeal from the aforesaid final judgment and decree which dismissed its intervening answer with prejudice, and denied its claim to any of said property.

The record in this and all the companion cases is voluminous. Respondent's return in the instant proceeding, with the accompanying exhibits, contains some 225 pages. Upon the coming in of the return, relator filed a motion for judgment on the pleadings, so that there is no issue of fact to be determined, and the questions for decision are issues of law. In the view we take of the case, it will not be necessary to discuss many of the interesting questions which have been so capably and exhaustively briefed by respondent's able counsel.

The first proposition urged is that relator's petition or application for mandamus was not sufficient to invoke this court's jurisdiction to issue the alternative writ herein because it failed to allege the nature of the petition filed by the successor trustees in cause No. 23,694-C, and that neither the original petition nor the amended petition therein was set out in relator's application, nor brought to this court by the relator as a part of the record in said cause. The same deficiency is alleged with respect to Yale University's intervening answer, the replies thereto, and the findings of fact and final judgment. We are not inclined to examine into the merits of this contention for these reasons: (1) Respondent by his return alleged that it is necessary for this court to have before it the documents referred to as the basis upon which this court will rest its judgment, and accordingly filed copies of the same as a part of his return; (2) In his brief respondent expressly admits that this court may search the record "to see if the entire record, *including the return of the respondent,* has brought the subject matter of this controversy within the jurisdiction of the court." In this situation, the contention now made will be disregarded.

The point is urged that relator has an adequate remedy under Section 1189, R. S. '39, in relation to special appeals, or by suing out a writ of error, under Section 1200, R. S. '39, and, therefore, mandamus will not lie. But the difficulty with this position is this: If respondent is correct in its assertion that relator is not entitled to a review of the decree in question because it is not aggrieved thereby, then, by the same token, it follows that it would not be entitled to review by special appeal or writ of error. A writ of error is a writ of right, and issues as of course [Section 1200, R. S. '39], but it has been held that it must contain on its face the evidence of the right of the plaintiff in error to a review. [Fidelity Trust Co. v. Mexico, S. F. & P. Traction Co., 270 Mo. 487, 194 S. W. 52.] It cannot be successfully maintained that relator's bare legal right to the *issuance* of a writ of error would constitute an adequate remedy under the facts here involved. Moreover, the allowance of an appeal by special order under Section 1189, supra, is only permissive and discretionary, and conditioned upon error (against the party applying) affirmatively appearing from an inspection of the record. There is no such burden under the ordinary procedure invoked by relator. It

is well-settled that a party cannot pursue both remedies, appeal and writ of error, simultaneously, so if a party is entitled to an appeal, we would not be disposed to deny mandamus to compel the allowance thereof because of his failure to take the further step suggested.

The remaining proposition, and the one most strenuously urged and relied on, is that relator is not entitled to an appeal because it is not aggrieved by the judgment and decree which it seeks to have reviewed. This point is developed in a variety of ways and under a multiplicity of heads throughout respondent's brief.

It is asserted that the appeal would be unavailing, and, therefore, mandamus will not lie, because under the record proper in said cause and the admissions of the parties, the appellant (relator) could be given no relief: (1) Because title to the trust property is shown by the trust instruments, and further shown by the construction placed on those instruments by the parties thereto, so that neither Robert Campbell or Virginia retained any interest whatever in said trust property which could or did constitute a reversionary interest (as contended by relator) in the property conveyed by the "Deed of Settlement;" (2) Because the claim of Yale University is directly contrary to the facts which it admits existed; (3) Because if Yale University had recovered judgment, it would have been against the law, and the admitted instruments of title; (4) Because Yale University is estopped to claim any part of the estate; (5) Because its intervening answer "will be found as a matter of fact and law to be fatally defective, in that it conferred no jurisdiction upon said court to grant the relief prayed . . . . or any other relief."

Obviously these questions go to the merits of the case, and not to the right of appeal, and are, therefore, not open to inquiry in this proceeding. In State ex rel. Speckerman v. Allen, J., 92 Mo. 20, 4 S. W. 414 (mandamus to compel the allowance of an appeal from the probate to the circuit court, which reached this court by appeal), it was said, "Whether the order . . . was valid or invalid, whether the determination of the probate court on that or any other issue raised in the proceeding was right or wrong, could afford us no ground for refusing . . . . the right to appeal,—the only means provided by law by which he could have those questions passed upon by a superior tribunal. It is foreign to the subject and purpose, as it is inconsistent with the nature of the proceedings by *mandamus* to review judicial proceedings; and in this case, whatever they may have been, and whatever effect the action of the probate court may have had on the rights of the parties contestant, and who had submitted those rights to the exercise of its jurisdiction, could not be inquired into or reviewed by the circuit court in this proceeding, and could not afford any ground for refusing the writ. High, Extr. Rem., c. 3, secs. 147, 150, 188, 189, 190; State v. Norton, 20 Kan. 506; Potter v. Todd, 73 Mo. 101." See, also, State ex rel. Adamson v. Collier, J.,

62 Mo. App. 38. To follow respondent's reasoning would require us to hold that the statute [1184, R. S. '39] giving parties "aggrieved" the right to appeal is meaningless, unless it can be demonstrated that the offending judgment is erroneous; and this, we think, is contrary to the spirit, purpose and intent of the statute.

The denial of relator's claim of right to a portion of the trust property places relator in the position of a party aggrieved, within the meaning of the statute, from which it follows relator is entitled to an appeal, and our alternative writ should be made peremptory.

We proceed to a consideration of cause No. 37,872, wherein relator seeks to compel the respondent judge to allow an appeal from an order of partial distribution in cause No. 23,694-C, pending below. Judgment and decree on the merits was rendered in said cause on June 19, 1941, whereby the respective rights, titles and interests of the parties were adjudged. It provided that certain alleged heirs of the deceased cestui que trust, Hazlett Campbell, were entitled to receive out of the distributive net estate, when distributed and when the nature and description of the corpus of said estate should be determined by a further order of the court, in proportion to the alleged interests of each said heir, as fixed and determined by said decree. The court reserved jurisdiction to specify the amount in which, and the date on which, and the manner, terms and conditions upon which said distribution should be made.

Thereafter, on August 22, 1941, and at the judgment term, respondent granted motions of certain of the alleged heirs for an order of partial distribution, and ordered the trustees to pay over and distribute to said alleged heirs the sum of $540,000.00, in accordance with their interests as fixed and determined by said decree. This action was followed by relator's motion to set aside said order, and the filing of an affidavit for an appeal, which was denied. No question arises as to the timeliness or sufficiency of the affidavit as such. The question presented is whether relator is entitled to an appeal from the order of partial distribution.

The same questions presented in cause No. 37,871 are reasserted in this proceeding along with certain others. Indeed, the return in the latter case is incorporated by reference as a part of the return in the instant case. What was said in the other case with respect to the question of the sufficiency of relator's application, the existence of other adequate remedies, and the status of relator as an aggrieved party (on the merits) is applicable to the case at bar, and need not be reiterated. We pass to a consideration of questions not raised in the other case.

The value of the trust property held by the trustees is in excess of $1,800,000.00; relator claims one-half interest in it or $900,000.00; the order of distribution affects only $540,000.00, leaving a substantial sum in excess of relator's claim to protect it against any depreciation

1054

in the value of the trust property, and it is said for this reason the appellant was not aggrived, nor entitled to appeal from the order complained of. A closely related question is also presented, i. e., because relator announced its intention to appeal without bond, the respondent ''deemed it his duty, in equity, good conscience and a spirit of fair dealing to deny the appeal sought against the order of partial distribution.''

Under the express terms of the statute [Sections 1186, 1188, R. S. '39] an appeal bond is not a prerequisite to the right of appeal. A party may or may not elect to obtain supersedeas by giving bond. But whether he does or does not does not affect his right to appeal. It follows, therefore, that the reasons assigned cannot be upheld. The order is within the purview of Section 1184, supra, providing for an appeal from ''any special order after final judgment in the cause,'' and is, therefore, appealable. The fact that an excess in value over the amount of relator's claim will presently remain is not conclusive on the question of whether it is aggrieved by the order of partial distribution. The value of the securities constituting the bulk of the trust estate may and probably will fluctuate. If the depreciation is sufficiently great, it is plain that relator might be deprived of its interest, if it is finally adjudged that it has such, and in that sense we are of the opinion that it is a party aggrieved and, therefore, entitled to the allowance of an appeal.

The order in each of the two cases will be that the alternative writ be made peremptory. All concur, except *Gantt, J.,* absent.