[1] This is a proceeding to modify a divorce decree as respects the provision for the custody of a minor child.
[2] The divorce action was brought in the Circuit Court of the City of St. Louis by the wife, Maryella Schumacher, against her husband, R. J. Schumacher. She prayed, among other things, that she be awarded the care and custody of the parties' minor child, Roland Forest Schumacher, then eleven years of age.
[3] The defendant husband formally entered his appearance and answered by a general denial, but did not appear at the hearing of the cause, at the conclusion of which, in addition to a divorce, plaintiff was awarded custody of the minor child, with an allowance of $50 a month for the child's support. The decree included a provision that defendant should have the right of visitation at all reasonable times.
[4] The divorce decree was rendered on January 13. 1947. Thereafter plaintiff, accompanied by the child, moved to Kansas City, Missouri, and took up her residence in the home of her mother, Jeannette LePage, *Page 843 
and her stepfather, Frank T. LePage. On November 25, 1947, she executed her last will and testament by the terms of which she set up a trust for the benefit of her son in any property of which she might die possessed, and not only nominated the LePages as executors of her will and trustees of the trust therein created, but also purported to designate them as guardians of her son's person and curators of his estate.
[5] On January 2, 1948, plaintiff died, leaving the child in the home of the LePages in Kansas City, and within their actual control.
[6] On January 22, 1948, the defendant father appeared in the Circuit Court of the City of St. Louis and filed his motion to modify the decree in the original divorce action by which plaintiff had been awarded the divorce with custody of the minor child. As the ground for his motion, he alleged that upon the death of his former wife, he, as the surviving father, had become entitled to the custody of the child, and that he had made demand upon Jeannette LePage, the child's grandmother, who had refused to permit him to have the child. He prayed the court to modify its decree so as to award the custody of the child to him.
[7] Thereafter defendant filed a motion for a pre-trial conference, again alleging that the grandmother, Jeannette LePage, had refused to allow the child to reside with him after plaintiff's death, and praying the court to make an order directing Senator Milton F. Napier, who had been counsel for plaintiff in the divorce action, to appear in court for the pre-trial conference.
[8] On February 6, 1948, by leave of court, the LePages, styling themselves testamentary guardians of the person and curators of the estate of the minor child, purported to intervene in the cause by filing a motion in which, after charging that it was to the child's best interests to remain in their home, they prayed that defendant's motion to modify be denied, and that they be awarded general custody of the child, subject to defendant's right of reasonable visitation and temporary custody. Attached to their intervening motion was a copy of plaintiff's last will and testament in which she had undertaken to designate them as guardians of the child's person and curators of his estate.
[9] Immediately upon its filing, the LePages' intervening motion was heard by the court and time granted defendant for filing an answer thereto.
[10] Instead of answering, defendant filed a motion to strike the LePages' intervening motion upon the ground that the LePages were not proper parties to the proceeding and had no legal right to intervene and be heard upon the question of the child's custody. Defendant's motion was heard and submitted, and on May 3, 1948, the court, while sustaining defendant's motion to strike, which would seemingly have called for no further action on the LePages' intervening motion, nevertheless entered an order overruling the same. At the same time the court sustained defendant's motion to modify, and directed that the care, custody, and control of the minor child be thenceforth awarded to defendant.
[11] Three days later the LePages filed a motion for a new trial in which they set out, among other things, that their deceased daughter's estate was then in process of administration in the Probate Court of Jackson County; that they had theretofore made application to such probate court for appointment as guardians of the person and curators of the estate of the minor child; and that the probate court had entered an order authorizing them to resist defendant's motion to modify in order that the directions in plaintiff's will might be carried out and complied with. The directions referred to were, of course, the provision in the will purporting to designate the LePages as guardians of the child's person and curators of his estate. By leave of court a certified copy of the order of the Probate Court of Jackson County was filed along with the motion for a new trial.
[12] Thereafter defendant filed a motion to strike the LePages' motion for a new trial upon the ground theretofore urged, that is, that the LePages were not proper parties to the proceeding and had no legal right to *Page 844 
question defendant's right, as the sole surviving natural parent, to have the custody of his child. But while insisting that the LePages were strangers to the proceeding, defendant nevertheless prayed the court to "order and direct Frank T. LePage and Jeannette LePage to surrender the custody of Roland Forest Schumacher to this defendant, pursuant to the order and decree of this Honorable Court awarding the control, care and custody of said child to this defendant".
[13] The record does not indicate that any specific action was taken on defendant's motion to strike the LePages' motion for a new trial. However on June 30, 1948, the court overruled such motion for a new trial, whereupon the LePages gave notice of appeal, and thereafter caused a transcript of the proceedings to be filed in this court.
[14] Upon the transfer of the case to this court, defendant filed a motion to dismiss the appeal upon the ground that the LePages were neither proper parties to the proceeding nor aggrieved by the action of the court, and were consequently not entitled to appeal from its decision. The motion to dismiss has been taken along with the case. The LePages argue, on the other hand, that having been allowed to intervene and become parties to the proceeding, they were aggrieved by all the adverse orders which were entered on May 3, 1948, including the order striking out their motion, and were therefore properly entitled to appeal. As for the merits of the case, they argue that upon the death of the plaintiff mother, the divorce action abated, so that the court was thereafter without jurisdiction to modify its decree as respects the custody of the child.
[15] The question of the LePages' right to appeal is so closely interwoven with the merits of the case that the one can hardly be considered apart from the other.
[16] An action for divorce is a statutory proceeding giving rise to a remedy which is purely personal to one or the other of the two spouses. The primary object of such an action is of course to dissolve the marital status; and as a necessary incident to such relief the court is authorized, as a part of its decree, to make provision respecting such things as alimony for the wife and the matter involved in this proceeding — the custody and maintenance of any minor child. Nor in a case where there is a minor child to be provided for does the court exhaust its jurisdiction by the entry of the original decree. On the contrary, it retains a limited jurisdiction to make such subsequent modification and alteration of the provision for the child's custody and maintenance as changed conditions may require. Morgens v. Morgens, Mo.App., 164 S.W.2d 626.
[17] For this purpose the action remains pending, even though the court's dissolution of the marital status of the parties has become final and conclusive. Crooks v. Crooks, Mo.App., 197 S.W.2d 686. In other words, while the parties are no longer husband and wife, they remain none the less the father and mother of the child; and the court retains jurisdiction to resolve such conflicting parental claims as may subsequently arise, with the paramount view at all times of securing the best interests of the child itself. It is to be borne in mind, however, that the court does all this in the exercise of its jurisdiction over the pending divorce action to which the parents of the child are the only parties, and as an incident to the controversy between them and them alone. Any proceeding to modify must be instituted on the application of one or the other of such parties, and there is no authority in this state for third parties, such as the grandparents of the child, to intervene in the action or file a motion for a modification of the court's decree. Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215. Consequently, whatever imperfections there were in the proceeding in this case, it purported to be the character of proceeding to which the LePages had no right to intervene; and the court ruled properly in striking their motion and in denying them the status of parties to the case.
[18] But even though we can now say that the court was correct in striking out their intervening motion, it does not follow *Page 845 
that they were without the right to challenge such action by an appeal to this court. In fact we would have no opportunity to say that the court was correct unless there had been some one to bring the matter before us. The question is whether they were aggrieved by the decision, and whether the decision was of a character to be appealable. Laws Mo. 1943, § 126, p. 390, Mo.R.S.A. § 847.126. It is of no consequence upon this question that the particular decision turns out to have been right. The statute giving aggrieved parties the right to appeal from an offending judgment does not require a showing that the judgment is erroneous. State ex rel. Yale University v. Sartorius, 349 Mo. 1039, 163 S.W.2d 981.
[19] The truth of the matter is that the whole proceeding to modify the decree was void for want of jurisdiction. When we say, as we usually do, that the court which grants a divorce retains jurisdiction to determine the custody of a minor child until the child attains its majority, what we actually mean is that it retains jurisdiction until that eventuality is reached, provided both parents continue to live. State ex rel. Walker v. Crouse, Mo. App., 205 S.W.2d 749; Shreckengaust v. Shreckengaust, Mo.App., 219 S.W.2d 244. We have already pointed out that a divorce proceeding, with all its incidents, is personal to the two spouses, and that the court retains jurisdiction over a minor child for the purpose of settling the right of custody as between the claims of the child's parents. That general custody must necessarily be awarded to one parent alone does not forever cut off and bar the other, but upon the death of the one to whom general custody has been awarded, the survivor, if otherwise fit, is thereupon restored to all the rights belonging to a natural parent. State ex rel. Walker v. Crouse, supra. However the surviving parent's rights may not be asserted in the divorce action, which abates upon the death of either of the parties so that the power of the divorce court over the custody of the child once and for all completely terminates. State ex rel. Walker v. Crouse, supra; 27 C.J.S., Divorce, § 314. Thenceforth if it is necessary for the surviving parent to take legal steps to recover possession of the child from some third person, the remedy is by habeas corpus, and not by motion to modify in the divorce action, which is no longer pending before the court.
[20] But notwithstanding the fact that the court was without jurisdiction to modify its decree after the death of the plaintiff mother, it nevertheless assumed such authority, and proceeded to exercise it. Furthermore there was one case in the books which directly supported such proceeding. Edwards v. Engledorf, Mo.App., 180 S.W.2d 603.
[21] Generally speaking, a party or person is aggrieved by a judgment, order, or decree whenever it operates prejudicially and directly upon his property, pecuniary, or personal rights. And of course the necessity that the prospective appellant be aggrieved applies no less to an intervener or one denied the right to intervene than it does to an original party to the case.
[22] While one whose application to intervene has been denied may obviously not appeal from the final judgment on the merits of the case, he may appeal from the order denying his application, if the order is otherwise appealable, and he is aggrieved by it. 4 C.J.S., Appeal and Error, § 186. The latter conditions are met whenever, on the face of the proceeding, his rights can be preserved in no other way than by intervention, and the order denying his application finally determines the case so far as he himself is concerned. 4 C.J.S., Appeal and Error, § 118; City of St. Louis v. Silk, 239 Mo.App. 757, 199 S.W.2d 23.
[23] When defendant filed his motion to modify in the instant case, he was confronted at the outset with the anomalous situation of attempting to prosecute an adverse proceeding in which the opposite party was dead. Although he must have appreciated that plaintiff's death would in any event have terminated her former counsel's further authority to represent her, State ex rel. Potter v. Riley, 219 Mo. *Page 846 
667, 684, 118 S.W. 647, the best he could do was to ask the court to make an order directing such former counsel to appear in court presumably in her behalf.
[24] The truth of the matter was that while purporting to prosecute a motion to modify the decree in the divorce action, defendant was actually trying the very case that would have been presented in a habeas corpus proceeding. He alleged the child's unlawful detention by its grandmother, Jeannette LePage; and the practical relief he was seeking was to have the child taken from the LePages and turned over to him. As a matter of fact, while strenuously resisting the LePages' right to intervene in the case, he finally prayed the court in express terms to order and direct them to surrender the child to him.
[25] In other words, the whole controversy was necessarily between defendant and the LePages, and if the court had had jurisdiction after plaintiff's death, there would have been no one but the LePages to oppose defendant's claim. In this situation the LePages asked and were permitted to intervene. Later their motion was stricken, and they were denied the right which had previously been accorded them. Even though there was no legal effect to be ascribed to plaintiff's will designating them as the guardians of the person and curators of the child's estate, they nevertheless relied on such supposed authority, and they were supported by an order of the Probate Court of Jackson County, which, even though it was likewise without legal effect, undertook to authorize them to resist defendant's motion to modify in order that the directions in plaintiff's will might be carried out and complied with. The dismissal of their motion to intervene finally denied them all opportunity to assert what they conceived to be their personal rights, and made them parties aggrieved within the meaning of the statute. State ex rel. Yale University v. Sartorius, supra. Nor does it alter our conclusion that the proceeding was void for want of jurisdiction, since it was none the less to be considered so far in existence as to be reviewable on appeal. State ex rel. Coonley v. Hall, 296 Mo. 201,246 S.W. 35; 4 C.J.S., Appeal and Error, § 110.
[26] But on the state of the record, that is, with the LePages denied the right to intervene, the only order by which they were aggrieved, and from which they were entitled to appeal, was the order striking out their motion. Not having been allowed to remain in the case, they could not appeal from the order awarding the child's custody to defendant. Such order is consequently not before us for any affirmative action upon it, even though it has been necessary to point out in connection with the matters which are before us that the court was acting without jurisdiction. The only two questions with which we are concerned are, first, whether the court ruled properly in striking out the LePages' motion to intervene, and second, whether they had the right to appeal from such order and seek the decision of this court upon it. We have found that they had the right to appeal, even though it develops that the court was correct in denying them the right to intervene.
[27] It follows that respondent's motion to dismiss the appeal should be overruled, and that the order sustaining defendant's motion to strike the interveners' motion to modify should be affirmed. The Commissioner so recommends.