Marjorie B. PRINCE, Plaintiff-Appellant,

v.

Clyde BENNETT, Defendant-Respondent.

No. 47062.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Ward & Reeves, Caruthersville, for appellant.

Harold D. Jones, New Madrid, for respondent.

HOLMAN, Commissioner.

On the early morning of December 6, 1956, Aaron Prince was killed when his skidding dump truck was struck by defendant's tractor-trailer truck. In this action for damages, plaintiff, his widow, obtained a verdict and judgment for the sum of $25,000 for the alleged wrongful death of dece-

dent. The trial court overruled defendant's motion to enter judgment for defendant in accordance with his motions for directed verdict, but sustained his motion for new trial upon the following grounds: "A. The verdict and judgment rendered thereon is against the weight of the evidence. B. Instruction No. 1 given at the request of the plaintiff was erroneous for the reason that the evidence offered was not sufficient to submit the cause to the jury on the duty of the defendant, under the facts and circumstances in the evidence, to swerve his vehicle so as to avoid hitting the plaintiff's vehicle, and said instruction was not supported by the evidence." Plaintiff has appealed from that order.

Aaron Prince and his wife's brothers, R. H. Hayes, Jr. and Harold Lloyd Hayes, all lived in the same neighborhood about two miles west of Marston in New Madrid County. Each of those men owned a dump truck and engaged in hauling gravel. On the morning of the casualty they each left their homes at about 5 a. m. and drove west on Highway 62 in their respective dump trucks. They were on their way to a gravel pit located near Malden. R. H. Hayes, Jr. was in the lead truck and was from 500 to 600 feet ahead of the decedent's truck. Harold's truck was about 250 feet behind the truck decedent was operating. All of the trucks were being driven at a speed of about 45 miles per hour. They had driven west about 17 miles before the collision in question occurred.

Highway 62 runs east and west. The collision about which we are concerned occurred about 15 feet east of the east end of a bridge which crosses a drainage ditch. At that point the highway is 20 feet wide, the north half being a concrete surface and the south half blacktop. The bridge is 113 feet long, 20 feet wide, and has concrete bannisters four feet high and a foot thick. At the time of the collision it was very dark and, although it had not rained, the pavement was wet, "damp and sweating." The surface of the bridge was five or six feet higher than the general level of the highway which accounts for an incline which began about 150 feet east of the bridge. At the south edge of the highway (east of the bridge) is a seven-foot shoulder which was rocked and "in good shape." South of the shoulder was a ditch 12 feet deep.

The only surviving eyewitness to the casualty was Harold Hayes. As stated, his truck was 250 feet behind the truck decedent was driving. This witness stated that as decedent's dump truck approached the east end of the bridge he saw the eastbound trailer truck approaching the bridge from the west; that about that time he saw the brake light of decedent's truck coming on and the truck swerved to the left of the center line approximately three or four feet and "then he jerked back and when he jerked the truck back it went into a skid and then approximately 15 feet from the east end of the bridge they collided." Harold stated that at the time the Prince truck went into the skid it was approximately 135 feet from the bridge and the left duals of the truck were about three feet south of the center of the highway; that at the time of the impact the left duals were about 2½ feet south of the center of the highway; that during the 120 feet of skid the forward speed of the dump truck was reduced from 45 to 15 miles per hour; that at the time the brakes were first applied the dump truck was headed southwest, but that during the skid it was going west at times and northwest at times but was gradually skidding to where it was almost crosswise of the road at the time of collision. In other instances the witness stated that the truck was headed northwest at the time of the collision. As will hereinafter appear, the speed of the dump truck and the direction it was traveling at the time of the collision will become very important facts in the determination of the issues presented upon this appeal. Harold testified in three different instances concerning those matters and we think it advisable to quote this testimony. The following appears on his direct examination: "Q. What was the speed of the

dump truck, Aaron's dump truck at the time of the collision? A. Approximately fifteen miles per hour to the west and approximately ten miles per hour to the northwest." We quote the following from his redirect examination: "Q. Harold Lloyd, at the time of the actual impact, or collision, in which direction was Aaron's dump truck traveling? A. He was traveling north. Mr. Jones: I object to that, it is repetition. The Court: He may answer. A. He was traveling northwestwardly. Q. And at what speed was he traveling, Aaron's dump truck at the time? A. I estimated him at fifteen miles an hour west and ten miles per hour north." On recross: "Q. And at the time of the impact you say he was going in a northwestwardly direction at ten miles per hour? A. I estimate that. Q. And at the same time going in a westwardly direction at fifteen miles an hour? A. That is my estimate."

Harold Hayes further testified that at the time the dump truck started to skid he could see the trailer truck approaching from the west side of the bridge; that it was going not less than 40 miles per hour and that it did not slacken its speed or swerve at any time prior to the collision; that he later determined from his examination of the dump truck that the tractor struck it at the center of the left dual wheels; that the rear of the dump truck extended 40 inches from the center of the duals so that the truck, at the time of the collision, occupied almost six feet of the south half of the highway and the distance was approximately 4½ feet from the south end of the truck to the south edge of the highway. The witness stated that he later examined the trailer truck and found the print of the hub of the dump truck on the "main left part of the bumper." The witness further stated that upon impact the dump truck went into the air and after traveling approximately 45 feet "back eastward" it came to rest off the north side of the highway about 60 feet from the east end of the bridge. After the collision the tractor-trailer "peeled off" to the south

side of the highway and into the ditch and also came to rest about 60 feet from the east end of the bridge.

Aaron Prince died almost instantly from injuries received in the collision. The driver of the tractor-trailer truck was also killed. Another passenger in the cab of that truck was thrown out of the cab and rendered unconscious. It does not appear in the transcript whether he died, although it perhaps may be inferred from the transcript and briefs that he also died as a result of his injuries.

R. H. Hayes, Jr. was also called as a witness. He stated that when he was about 500 feet west of the bridge he met the tractor trailer going east at between 40 and 50 miles per hour. He stated that after a time he missed the lights of the dump trucks in his rear-view mirror and then turned around and went back to the scene of the casualty. He stated that he saw no skid marks on the highway at that time, or when he went back later in the day and examined the highway.

Plaintiff also called as a witness Mr. J. F. Faris who testified that he ran a salvage yard at Malden and was also engaged in the trucking business; that he went to the scene of the collision for the purpose of hauling the tractor-trailer truck into Malden; that the trailer was loaded with raisins and other dried fruit; that he unloaded 33,000 pounds of dried fruit from it; some of the cargo had been scattered around the area. The front end of the tractor was "caved back" and the tractor was "tore all to pieces" and the right side of the trailer was torn off.

The testimony indicated that the tractor was seven feet wide and the trailer was wider than the tractor. The overall length of the tractor-trailer truck was approximately 60 feet.

Plaintiff's case was submitted to the jury upon the alleged humanitarian negligence of the driver of the tractor-trailer truck in failing "to reduce the speed of said tractor-

truck and trailer and to swerve the same to his right" and to thereby have prevented the collision.

Upon this appeal plaintiff's main contentions are (1) that the trial court erred in granting a new trial on the weight of the evidence because defendant offered no evidence, and since the testimony of plaintiff's witnesses was uncontradicted, there was no evidence to weigh, and (2) since Instruction No. 1 conjunctively submitted the failure of defendant's driver to swerve and to reduce speed it was not erroneous, even if evidence was insufficient on issue of failure to swerve since the evidence was sufficient on the issue of failure to reduce speed. The defendant, in his brief, seeks to uphold the action of the court in granting a new trial, and has also raised the point that plaintiff failed to make a submissible case and hence that the court erred in failing to enter judgment for defendant in accordance with his motion seeking that relief. We will consider that contention first.

■ We think the jury reasonably could have found that defendant's driver should have known that plaintiff's decedent was in imminent peril when his truck went to the left of the center of the road and appeared to be out of control. Was there evidence from which a jury reasonably could have found that the driver thereafter, with safety to himself and others, could have avoided a collision with the dump truck by swerving the tractor trailer to the right, or, by slackening the speed thereof? At that time his tractor trailer was 140 feet from collision point and traveling 40 miles per hour. Assuming a reaction time of ¾ of a second, the vehicle was 95 feet from the place of impact when he could have taken some action in seeking to avoid the collision. It would appear clear that he could not have avoided such by swerving. That would have required that he drive a portion of the tractor upon the shoulder immediately after it left the east end of the bridge. To have

done so would have meant certain disaster, as the 45 feet of the trailer still on the bridge would have been brought into immediate contact with the south side wall of the bridge.

Was there evidence from which a jury reasonably could have found that the driver of the tractor trailer could have avoided the collision by slackening the speed of his vehicle while it traveled the 95 feet heretofore mentioned? It is difficult to compute the precise time involved as the tractor was traveling 40 miles per hour and the dump truck was skidding forward at a speed of about 15 miles per hour. However, it would appear that the driver had a little more than a second to reduce the speed after he should have applied the brakes. Assuming that the tractor trailer was being driven near the south edge of the pavement, it would seem that the dump truck would need to have moved a little over three feet to the north in order to have avoided the path of the tractor. Defendant points to the fact that there is no evidence that the speed of the tractor trailer could have been reduced during the time the decedent was in imminent peril. We agree that such evidence would have been highly desirable. However, if, as plaintiff contends, this is an "almost escaping" case, specific proof of the extent that the speed could be slackened is not always required. Stith y. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972.

Harold Hayes estimated that at the time of the collision the dump truck was going 10 miles per hour "to the north." If that estimate is to be accepted as substantial evidence, then the dump truck was moving from the path of the tractor at the rate of 14.66 feet per second. Assuming that situation to be true we would be inclined to hold that plaintiff made a submissible case, as an additional ¼ second would have permitted the dump truck to have moved northwardly out of the path of the tractor.

However, defendant contends that the testimony of Harold Hayes may not be accepted as substantial evidence in many respects, as it is inherently impossible, contrary to the laws of motion and mathematics, and, at most, is conjecture and speculation. It is pointed out that in the two or three seconds before the collision Harold was (1) slowing his own truck, (2) watching the tractor trailer and formulating the opinion that it was going at a constant speed of at least 40 miles per hour, during a part of which time it was 500 feet away from him, and (3) watching decedent's dump truck and remembering its location and course on the highway, as well as forming an opinion as to its forward sliding speed, as well as its speed to the north, and this even though it moved only six inches to the north during the entire 120 feet it was sliding forward. It is also suggested that he testified that while the dump truck was moving 120 feet its speed was reduced to 15 miles per hour, while in the same period of time the tractor trailer moved only 140 feet at 40 miles per hour, which shows that both estimates cannot be correct. It is also said to be contrary to physical laws for an object to move in a westerly direction and in a northerly direction at the same time.

Of course, the dump truck could not have traveled due west and due north at the same time. However, we know of no law of motion which would prevent the truck from skidding in a westerly direction and at the same time moving toward the north if proper forces were applied to cause that movement. The result of that situation would be that the truck would move toward the northwest. More specifically, it would appear that the result of such a movement or movements would be that the truck would be moving in one direction only (northwest) at a certain single speed. In other words, instead of the truck going 15 miles per hour to the west and 10 miles per hour to the north, it would actually be going in a northwestwardly direction at the rate of a certain number of miles per hour. It is our view that the ordinary driver and observer of a motor vehicle (as was Harold) could form an opinion that a vehicle is going at a given speed in one direction (west, north or northwest) but does not possess the skill, from observation, to say that it is passing over a surface at a given speed in one direction and at another speed in another direction. Perhaps a skilled mathematician, with definite facts available, could compute the results of such movements.

We think that it is a well-known law of motion or mechanics that an object which is moving over a surface in a straight line will continue to so move unless compelled by impressed force to change the direction. See Vol. 15, Encyclopedia Britannica, Mechanics, pp. 157, 160. When the dump truck went into a skid its momentum evidently carried it forward toward the west substantially in a straight line as it moved only six inches toward the north while traveling 120 feet, according to the eyewitness. The only way it could thereafter move toward the north would be for some applied force to propel it in that direction. The only force which appears to have been available for that purpose was the force of the engine of the dump truck in turning its wheels. It would seem entirely possible that, as the force of the skid was reduced, the power from the engine might cause the wheels to turn and thus propel the vehicle toward the north or northwest. However, as stated, the dump truck had moved only six inches toward the north at the time of the collision. We do not know whether that movement was gradual during the entire 120 feet or occurred suddenly just prior to impact. However, in either event, we do not think a witness, under the circumstances here appearing, could observe the truck moving only six inches in a given direction and formulate a credible opinion that the truck was moving in that direction at 10 miles per hour or at any other substantial rate of speed. Such an opinion is bound to be

based on guess, speculation and conjecture and may not be regarded as substantial evidence.

It has been said that "not every human assertion is to be accepted as the basis of an inference that the thing asserted is true. Wigmore on Evidence (3rd Ed.), Vol. II, Section 475, loc. cit. 516. And, it would seem to be elementary and self-evident that no witness should be heard with respect to that concerning which he does not possess the fundamental and basic testimonial qualification of knowledge; or, as succinctly stated many years ago, '(n)o one can be allowed to prove what he has never learned, whether it be ordinary or scientific facts.' Elliott v. Van Buren, 33 Mich. 49, 53. So, when the testimony of a witness, read as a whole, *conclusively* demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on such issue cannot be regarded as having any probative value." Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 791. Since the testimony of Harold Hayes that the dump truck was traveling "north" or "northwest" at 10 miles per hour was not substantial evidence, there is no evidence in the record to support a submission or finding that the dump truck would have moved out of the path of the tractor trailer prior to the collision, if the speed of that vehicle had been slackened after plaintiff's decedent came into a position of imminent peril. It follows that plaintiff did not make a submissible case.

We have decided, however, that the case should be remanded for a new trial rather than to remand with directions to enter judgment for defendant. While we cannot point to any available evidence that might enable plaintiff to make a submissible case, we can understand that plaintiff's counsel, having the positive testimony of a witness which, if accepted, would have been sufficient to supply the essential proof, may not have presented all available evidence (particularly of an expert nature) which might aid plaintiff in making a stronger showing. Moreover, we are impressed by the fact that the trial court ordered a new trial rather than entering judgment for defendant, as we think the nature of the order would indicate that the court must have actually had the view that Harold's testimony (in the essential respect heretofore noted) was not substantial evidence. The order would indicate that the trial court had the view that upon another trial it was reasonably possible that plaintiff would be able to make a submissible case. That court was in a better position to be advised in that regard than are we.

The result we have reached makes it unnecessary to consider other points briefed. We note that defendant has complained of the fact that in presenting her case plaintiff used a magnetic blackboard with a drawing of the scene thereon, purportedly drawn to scale, and that toy cars were used to demonstrate the manner of the instant occurrence which admittedly were not sized to scale. No doubt, in the event of another trial, plaintiff's counsel will endeavor to correct that situation.

For the reasons indicated, the order granting a new trial should be affirmed and cause remanded.

It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the Court.

All concur.