FRANK DIEL, RESPONDENT, v. ST. LOUIS PUBLIC SERVICE COMPANY, A CORPORATION, APPELLANT.—192 S. W. (2d) 608.

St. Louis Court of Appeals. Opinion filed February 19, 1946.

*Mattingly, Berthold, Jones & Richards* for appellant.

*Everett Hullverson* for respondent.

*Orville Richardson* of counsel.

SUTTON, C.—This is an action to recover damages for personal injuries sustained by plaintiff when struck by defendant's street car on Michigan Avenue, in the City of St. Louis, at a point about sixty feet south of Stein Street. Michigan Avenue runs north and south, and Stein Street runs east and west. Ivory Street runs northeast and southwest. It intersects Michigan Avenue on the west just south of Stein Street. The accident occurred east of the southwest corner of the intersection of Ivory Street with Michigan Avenue. Ivory Street does not extend beyond Michigan Avenue. The accident occurred on March 2, 1944, about ten-thirty at night.

Defendant maintains a single track on Michigan Avenue. It is used solely for northbound street cars. The distance from the west curb of Michigan Avenue to the west rail of the street car track is fifteen feet. The distance from the east rail of the track to the east curb of Michigan Avenue is 17½ feet. The distance between the rails of the track is five feet. There is a regular stopping place for northbound street cars just east of the southwest corner of the intersection of Ivory Street and Michigan Avenue. The stopping place is designated by a yellow band on a trolley pole. The pole is on the east side of Michigan Avenue.

Plaintiff at the time he was struck was walking east across Michigan Avenue from the southwest corner of the intersection of Ivory Street and Michigan Avenue, with the intention of boarding a northbound street car which was then approaching the regular stopping place. When he got just over the east rail of the track he was struck by the approaching street car, and thereby received the injuries for which he sues.

This action was commenced on March 14, 1944, and was tried, with a jury, in February, 1945. The trial resulted in a verdict in favor of plaintiff for $6500. Judgment was given accordingly, and defendant appeals.

1052

On behalf of the plaintiff the case was submitted to the jury under the humanitarian rule and the vigilant watch ordinance of the city.

Errors are assigned by defendant for the overruling of its motion for a directed verdict and for submitting the case under the vigilant watch ordinance. To support the assignment defendant urges that the evidence shows plaintiff guilty of contributory negligence as a matter of law, that there was no evidence to warrant the submission of the case under the humanitarian rule, and that contributory negligence is a complete defense as against negligence under the vigilant watch ordinance.

On direct examination, plaintiff testified that as he stepped off the curb and started into the street he was looking for a street car and at the same time watching on the Stein Street side to his left; that the street car was about half a block away when he first saw it; that when he first saw the street car he was just stepping off the curb into Michigan Avenue going east; that as he walked across the street he held his hand out (illustrating)—put his hand up; that he kept on watching the car, and kept on watching the other side of the street; that there was other traffic there; that he was watching the other traffic as well as the street car, watching both sides; that when he first saw the street car about half a block away he estimated its speed at about ten to twelve miles an hour, something like that; that it looked like it was going slow; that he walked right across the street going east toward the stopping place; that he was across the rail before he was hit; that he walked fifteen feet to the west rail and five feet more before he was hit; that he walked a little over twenty feet before he was hit; that he kept watching the car and watching the traffic on the other side, too; that there was no bell sounded on the street car; that he was walking across the street in an ordinary walk; that he was familiar with the intersection and with the street car track and had ridden past there quite often before; that the street car struck him on his right side; that he did not remember anything more until he regained consciousness the next morning at the hospital.

On cross-examination, plaintiff further testified that he walked from the west curb straight across the street; that as he started off the curb he looked to his right toward the street car and kept on watching to his left, too; that as he was stepping off the curb the street car was about 150 feet to the south of the stopping place; that he thought the street car was at that time running about ten or twelve miles an hour, that that was what he judged it to be; that he did not look at the street car at all times; that he kept watching to the left, too; watching Stein Street for traffic because machines travel there and come south on Michigan Avenue; that he did not watch the street car steady but watched on the side, too; that he just could not tell how many feet the car was away the second time he looked;

that he could not tell exactly how many feet it was away then; that it was about as far away as from the witness stand to the back of the courtroom; that he was then about a little over half ways, indicating on plat a point about half way between the curb and the east rail and five feet west of the west rail; that he saw the car the third time just about the time he was hit; that when he saw the street car away about the distance from the witness stand to the back of the courtroom he kept walking, raising his hand; that he kept watching the car and at the same time watched on the side on account of machines; that after he saw the street car about the width of the courtroom away he looked to the left; that he kept walking while he was looking to the left; that he still kept watching the car; that he did not remember whether he looked back to the right or to the south to see where the street car was before he stepped over the rail; that he kept walking but did not watch the street car all the time; that he kept watching Stein Street; that he walked at a medium gait; that he figured the car was going to stop and thought he had time enough to get across; that he could not tell if the car was coming ten or twelve miles an hour when it hit him; that how fast the car was running as he stepped over the west rail was something he could not tell; that, when he stepped from a place of safety into the path of the car, he would say the car was about ten or twelve feet away.

James Keys, a police officer, testified that he was called to the scene of the accident, and when he got there the front end of the street car was about forty feet south of the south curb of Stein Street, and the man was under the front end of the car up to his chest; that he was lying on his back and was bleeding about the head; that he was unable to carry on a conversation; that he interviewed the operator of the street car; that the operator told him that he did not see the man until the car was almost in the act of striking him, but that he made every effort to avoid striking him; that he assisted in getting the man out from under the car; that the man was unable to talk, didn't carry on any conversation whatsoever; that in his opinion the man was unconscious; that the street lights were all burning and the lighting was good; that one would have had no difficulty in seeing a person a block away walking across the street; that the weather was nice and the streets were dry; that the regular stopping place for street cars is about sixty feet south of the south curb of Stein Street; that the front of the car was about twenty or tweny-five feet north of the stopping place.

Carl Jobst, a police officer, testified that when he arrived at the scene of the accident he saw the man lying under the front end of the street car; that the front end of the car was to the best of his knowledge about a car length to the north of the stopping place; that after the man was put in an ambulance he accompanied him to the hospital;

that the man was in more or less of a coma; that he was moaning and was bleeding from the head.

Mrs. Marie Harr testified that when she arrived at the scene of the accident the man was under the street car; that he was unconscious; that the car was stopped about fifteen feet north of where it ordinarily stopped.

William Wells testified for plaintiff that at the place where the accident occurred, with the streets dry and the rails dry, and with reasonable safety to the passengers, the street car going at twelve to fifteen miles an hour could have been stopped in a distance within fifteen to twenty feet.

The vigilant watch ordinance, which plaintiff put in evidence, provides that the motorman or any other person in charge of a street car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to said persons or vehicles, the car shall be stopped in the shortest time and space possible.

The motorman was not produced as a witness. Defendant offered no evidence at all.

There could hardly be a doubt that plaintiff made a case for the jury under the humanitarian rule. He started across the street when the street car was about 150 feet away. As he crossed the street toward the track and before he got in the path of the car he was by uplifted hand signaling the motorman of his intention to cross the track to board the car. It is true that it was apparent that he saw the car approaching because he looked at it and signaled the motorman to stop, but it was just as apparent that he intended to cross the track. He not only signaled his intention by uplifted hand, but he continued walking straight across looking to the north as well as to the south. When he was five feet from the west rail and saw the car as far away from him as from the witness stand to the back of the courtroom, he looked to the left and kept walking while looking to the left. The street was well lighted. The car was approaching a regular stopping place. Persons intending to board the car would naturally be expected to be at or about this place. Plaintiff lacked only a step of clearing the path of the car when he was struck. It is evident that the motorman, if exercising the care and watchfulness required of him under the humanitarian rule, would have become aware of plaintiff's intention to cross the track in time to have avoided striking him by stopping the car or checking its speed. The slightest checking of the speed of the car would have saved plaintiff from harm.

Defendant urges in argument that plaintiff's own testimony shows that he came into a position of peril for the first time when the car was only ten or twelve feet away from him. To this we cannot agree. Plaintiff was in the zone of peril when it would have become apparent to the motorman, if in the exercise of ordinary care, that

plaintiff was unaware of his peril and intended to cross the track. [Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 53 S. W. (2d) 1043, l. c. 1044-1045; Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23; Homan v. Missouri Pacific R. Co., 334 Mo. 61, 64 S. W. (2d) 617, l. c. 624; Womack v. Missouri Pacific R. Co., 337 Mo. 1160, 88 S. W. (2d) 368, l. c. 371-372; Hoodenpyle v. Wells (Mo. App.), 10 S. W. (2d) 331, l. c. 332; State ex rel. Sirken & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S. W. (2d) 50; Crane v. Sirken & Needles Moving Co. (Mo. App.), 85 S. W. (2d) 911, l. c. 914; Bode v. Wells, 322 Mo. 386, 15 S. W. (2d) 335.]

Moreover, plaintiff's testimony as to the distance the car was away when he stepped into its path was a mere estimate, and, in view of the distance the car ran after it struck plaintiff, does not amount to a judicial admission, and is not conclusive. [State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S. W. (2d) 406, l. c. 409; Johnson v. Dawidoff, 352 Mo. 343, 177 S. W. (2d) 467, l. c. 471; Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 856; Scott v. Kansas City Public Service Co. (Mo. App.), 15 S. W. (2d) 518, l. c. 523; Haddow v. St. Louis Public Service Co. (Mo. App.), 38 S. W. (2d) 284, l. c. 286.]

Defendant further says that plaintiff's own testimony shows that he was half way from the curb to the west rail of the track when the street car was fifty feet to the south. His testimony does not so show. It shows that when he was five feet from the rail the car was so far away as from the witness stand to the back of the courtroom. The record does not show the distance thus indicated, but the jurymen and the trial judge were in a position to observe and judge the distance.

The motion for a directed verdict was properly denied.

However, if plaintiff was shown guilty of contributory negligence as a matter of law, as defendant contends, it was error to submit the case to the jury under the vigilant watch ordinance. But the ordinance was properly for the consideration of the jury on that issue. As plaintiff approached the track signaling the motorman to stop he had a right to assume, in the absence of notice or knowledge to the contrary, that the motorman would exercise that degree of care and watchfulness required of him by the ordinance. He likewise had a right to assume that the motorman would slow down and stop the car in obedience to his signal. [Unterlachner v. Wells, 317 Mo. 181, 296 S. W. 755, l. c. 762; Lackey v. United Railways Co., 288 Mo. 120, 231 S. W. 956, l. c. 961; Heigold v. United Railways Co., 308 Mo. 142, 271 S. W. 773, l. c. 776; Hawkins v. Wells (Mo. App.), 297 S. W. 193, l. c. 195; Wilson v. Wells (Mo.), 13 S. W. (2d) 541, l. c. 544; O'Donnell v. Wells 323 Mo. 1170, 21 S. W. (2d) 762, l. c. 764.]

From the fact that plaintiff was aware of the approach of the car it does not necessarily follow that he was aware, or ought to have

been aware, of the peril to which it,was subjecting him. Under the facts here that was a question for the jury.

All of the circumstances conspired to prevent plaintiff from discovering the peril that threatened him and to lead him to think that he could cross the track in safety. As he crossed from the curb to the track he was in the southbound traffic lane just south of the intersection of three streets. It was imperative that he watch for traffic that might come upon him through the intersection. He signaled his intention to cross the track. No bell was sounded to indicate that the car would not be stopped in obedience to the signal, or to warn him of his peril, and, as already said, he had a right to assume, in the absence of notice or knowledge to the contrary, that the motorman would not disregard either the vigilant watch ordinance or the signal to stop the car.

There was no error in the submission of the case under the vigilant watch ordinance.

Defendant assigns error with respect to plaintiff's instruction under the humanitarian rule, on the ground that the instruction conflicts with the defendant's sole cause instruction. The instruction thus criticized, eliminating some of its verbiage, for the sake of brevity, is as follows:

"The Court instructs the jury that if you find and believe from the evidence that . . . plaintiff became and was in a position of imminent peril of being struck and injured by said street car and that defendant's motorman saw, or by the exercise of ordinary care could have seen plaintiff in said position of imminent peril in time thereafter, by the exercise of ordinary care, with the means and appliances at hand and with reasonable safety to said street car and its occupants, to have stopped said street car or slackened the speed thereof, and that by so doing defendant could have avoided striking and injuring the plaintiff, . . . then your verdict must be in favor of the plaintiff and against the defendant; and that is true even though you may find and believe from the evidence that plaintiff was himself negligent in a manner contributing to placing himself into the aforesaid position of imminent peril."

We can see nothing in the instruction authorizing a verdict for plaintiff if his negligence was the sole cause of his injury. Under the instruction the jury had to find that defendant's negligence directly contributed to plaintiff's injury. The concluding clause does not use the broad language found in the instruction under review in Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, l. c. 53. It is obvious that the instruction here under review would not be in conflict with a proper sole cause instruction. [Ramel v. Kansas City Public Service Co. (Mo. App.), 187 S. W. (2d) 492, l. c. 497, 498; Bowman v. Standard Oil Co., 350 Mo. 958, 169 S. W. (2d) 384, l. c. 387.]

Defendant complains of the instruction on the further ground that it does not require a finding that plaintiff was in inextricable peril. The assignment is clearly untenable. It was not essential that the instruction require such a finding. [Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S. W. (2d) 915, l. c. 921, 922.]

Defendant assigns error for the refusal of its instruction B, which reads as follows:

"The Court instructs the jury that, in deliberating upon this case, it is your duty to decide, first, whether or not under all the facts and circumstances in evidence, there is or is not any negligence on the part of the defendant, its operator and agent, as submitted and defined by the other instructions. Until this question of negligence has been determined by you, you have no right to consider the amount, if any, that plaintiff has been damaged.

"If the plaintiff is not entitled to recover damages, that is, if plaintiff has not shown by the preponderance or greater weight of the credible evidence upon the question of negligence that he should recover at your hands, then in your deliberation you should not and must not consider to what extent, if any, plaintiff has been damaged by reason of his injuries, if any, sustained as a result of being hit by said street car.

"Neither passion, prejudice nor sympathy should influence you in any manner in deciding this case, you should in arriving at your verdict be governed only by all the evidence and the instructions of the Court."

The giving of a similar instruction was held not reversibly erroneous in Mendenhall v. Neyer, 347 Mo. 881, 149 S. W. (2d) 366. It was held, however, that the giving of such an instruction rests largely in the discretion of the trial court. We do not find in the record here any ground, and none has been suggested by counsel, to convict the trial court of an abuse of discretion in refusing the instruction.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.