JOHN H. STITH, (Plaintiff) Appellant-Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, (Defendant) Appellant-Respondent, No. 42697—251 S. W. (2d) 693.

Division One, September 8, 1952.

Motions for Rehearing or to Transfer to Banc Overruled, October 13, 1952.

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant St. Louis Public Service Company; *William H. S. O'Brien III* of counsel.

444

*Mortimer A. Rosecan, Inman, Dyer, Gray & Dreher, C. O. Inman* and *Charles E. Gray* for appellant-respondent John H. Stith.

LOZIER, C.—Action for damages for personal injuries. Plaintiff had a verdict and judgment for $25,000. Defendant filed its alternative motion for judgment or a new trial [695] under Sec. 510.290. (Unless otherwise indicated all statutory references are to RSMo 1949, V. A. M. S.) The trial court ordered a $7500 remittitur, overruled defendant's motion for judgment, overruled defendant's new trial motion "in all respects," and, alternately if plaintiff failed

to remit, sustained defendant's new trial motion on Specification 6 (that the verdict was excessive) and overruled the motion "as to all other particulars." Upon plaintiff's refusal to remit, the trial court ordered a new trial on the damages issue only. Both parties appealed.

We must first determine each party's right of appeal. "The right of appeal is purely statutory and does not exist where not given by statute." Koplar v. Rosset, 360 Mo. 1201, 233 S. W. 2d 1, 5. The pertinent statutes are: the provisions of Sec. 512.020 providing for appeals "from any final judgment in the case" or "from any order granting a new trial"; Sec. 510.330 authorizing the trial court to grant a new trial to "all or any of the parties and on all or part of the issues."

"For the purposes of an appeal a judgment must be a final judgment and it must ordinarily dispose of all parties and all issues in the case." Deeds v. Foster, (Mo.) 235 S. W. 2d 262, 265. Here, there was no final judgment against defendant from which it could appeal. See Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S. W. 2d 333, 335. Construing Secs. 510.330 and 512.020 together, we believe that a trial court may, by an appropriate order, make the judgment final as to any party as to whom, or on any issue on which, no new trial is ordered; and that any party aggrieved by such a final judgment is entitled to appeal therefrom. (As to appealability of a separate final judgment entered upon a verdict where a separate trial of a *claim,* as distinguished from an *issue,* is ordered, see: Supreme Court Rule 3.29; 2 Carr, Mo. Civ. Proc., Sec. 860.)

But where, as here, the trial court does not enter such an order and grants a new trial as to less than all parties or on less than all issues, the previously-entered-and-later-partially-set-aside judgment cannot become final. The effect of the instant order was to set aside portions of the judgment (those fixing the amount of plaintiff's damages) and to leave that issue entirely undisposed of; and to make the other portions (those relating to defendant's liability) interlocutory only. This was necessarily an interlocutory judgment—rather, an interlocutory order (see Barlow v. Scott, (Mo.) 85 S. W. 2d 504, 519)—as to any party as to whom, or on any issue on which, the new trial was not granted. And such judgment, nonfinal as to all parties and on all issues, is not appealable. Webster v. Sterling Finance Co., 351 Mo. 754, 165 S. W. 2d 688; White v. Sievers, 359 Mo. 145, 221 S. W. 2d 118.

The order first overruled defendant's after trial motion to set aside the verdict and judgment and for judgment in accordance with defendant's trial motion for a directed verdict. The overruling of such an after trial motion is not appealable. Bailey v. Interstate Airmotive, supra.

Had defendant been granted a new trial on all issues, defendant would have had no right of appeal. Vendt v. Duenke, (Mo. App.)

210 S. W. 2d 692, 699-700. See 2 Carr, Mo. Civ. Proc., Sec. 1184, 1949 Pamphlet, p. 53. Conversely, defendant could have appealed from a judgment entered on the jury's verdict for plaintiff, if its new trial motion had been overruled in its entirety. Bailey v. Interstate Airmotive, supra.

In language, the trial court's order "sustained defendant's motion for a new trial as to the measure of damages only, on Specification 6, * * * overruled" the motion "as to all other particulars except as to said Specification 6," and ordered a new trial on the issue of damages only. Actually, the order was the overruling of defendant's motion in its entirety and an order, on the court's own motion, of a new trial on a single issue under Sec. 510.330. The new trial ordered was one for which defendant had not asked in its new trial motion and one which plaintiff did not seek. Both parties appealed from the order. Sec. 512.020 provides for an appeal by an aggrieved party from "any order granting a new trial." We construe this language as including the instant order for a new trial as to the damages issue only. [696] We hold that both plaintiff and defendant, as a party aggrieved by such order, was entitled to appeal therefrom.

Plaintiff's assignment of error is an alleged abuse of discretion by the trial court in ordering the remittitur. Defendant says that plaintiff failed to make a submissible case and assigns error in the giving of plaintiff's Instruction No. 2, and in the giving of "verbal instructions."

Below, plaintiff abandoned his case as to primary negligence and went to the jury upon humanitarian negligence in failing to slacken speed.

Plaintiff was injured on the afternoon of August 23, 1949, when he was struck by defendant's streetcar in the passenger loading zone at Broadway and Kleber. (As did most of the witnesses, we use the term "loading zone" or "zone" to mean the entire chat-surfaced area, approximately 105' by 23'.) The streetcar involved was 46' long and had an overhang of 1' 5". On the west side of the loading zone is a handrail. The zone's east side is the west curb of Broadway. The zone has two sets of tracks. The southbound cars use the west tracks and the northbound cars the east. The east (in this instance, the "last") rail of the northbound tracks is 22' 6" from the handrail. The tracks south of the zone are straight and level. To the south for 300'-400', there are no obstructions to the view of either a person standing near the handrail or of the operator of a northbound streetcar.

The evidence, viewed most favorably to plaintiff, was: Plaintiff intended to board a northbound streetcar; he stood about 2' east of the handrail talking with Johnson, who was waiting for a southbound streetcar; plaintiff was watching the northbound tracks; he first saw the northbound streetcar when it was two blocks to the south; he watched it approach until it was about 270'-300' away; he did not

hear the streetcar bell ring at any time; he started to walk across the loading zone; he walked due east at a normal speed, did not run and did not pause; he neither looked south again nor saw the streetcar again until just an instant before it struck him; as he was between the rails of the northbound tracks, he saw some friends in an automobile on Broadway, to the northeast, and waved at them; as he was stepping over the last rail, he "glanced at the streetcar, but it wasn't any use, I couldn't go forward fast—east fast enough, and I couldn't go back and so it just had me between the rails"; the streetcar struck his head, right shoulder, right side and right leg.

Plaintiff and other witnesses, including several streetcar passengers, estimated the streetcar's speed variously between 20-45 m.p.h. Other than the streetcar operator, witnesses for both parties said that the speed was not slackened until the emergency brakes were applied, simultaneously with or an instant before the collision; and that the bell was not rung until the emergency brakes were applied. The streetcar stopped within 10'-15' (12' according to the operator) after the collision, with plaintiff's body parallel with the center exit door.

The evidence as to plaintiff's obliviousness was substantial. While he knew that the streetcar was approaching the loading zone, it was undisputed that he did not again look to the south and that he did not see the streetcar again until he was stepping over the last rail. "In the case at bar, although plaintiff had a general awareness of the *approach* of the streetcar, there was evidence upon which the jury properly could find that he was not aware of the *danger* from the approach of the oncoming streetcar. This vital difference has been recognized in the decided cases." Brungs v. St. Louis Public Service Co., (Mo. App.) 235 S. W. 2d 81, 84. "But the fact that the plaintiff once saw the streetcar does not prevent him from therafter obliviously coming into a position of imminent peril and if all the other elements of the doctrine are made to appear he is entitled to a submission of his case under the humanitarian doctrine." Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S. W. 2d 1000, 1002.

Plaintiff's obliviousness and his consequent peril alone did not make a submissible case under the humanitarian doctrine. The defendant is not liable unless the operator did realize, or should have realized, [697] that plaintiff was oblivious and intended to continue into the streetcar's path, and thereby was in imminent peril. Wilkerson v. St. Louis Public Service Co., (Mo) 243 S. W. 2d 953, 955. The duty of the instant streetcar operator to act arose upon reasonable appearances of obliviousness. Silver v. Westlake, (Mo.) 248 S. W. 2d 628, 632.

In the instant case, there was substantial evidence from which the jury could infer that plaintiff's obliviousness and imminent peril were or should have been apparent to the streetcar operator at some time after plaintiff started across the loading zone. The

operator testified: He had been defendant's operator for 38 years; he first saw plaintiff standing at the handrail talking to two men; at that time, the streetcar was a half block, 150′, away and its speed was about 20 m.p.h.; however, this was just an estimate, and the speed might have been 30 m.p.h. or 40 m.p.h.; he really didn't know how fast he was going as there was no speedometer; he saw the plaintiff "start across" the zone and watched him "from the time he took that first step till the time the accident happened"; plaintiff walked due east, did not veer or look again to the south; from the time he saw plaintiff start across until he applied the emergency brakes (which caused the bell to ring automatically) he manually rang the bell "to give him a warning that I was coming along there" and began "pressing" hard on the brakes and kept his foot on them; he was "trying them" to check the speed of the car. "Q. Why didn't your streetcar stop during that half block? A. It stopped but not in time. * * * Q. Why didn't your streetcar stop within that half block, if you had your foot on the brakes all the time? A. Well, I couldn't answer that question." His brakes were not defective and were working properly; at 25 m.p.h., he estimated that he could make an emergency stop in 160′, and at 20 m.p.h., 130′.

The operator said he watched plaintiff walk (how fast, the operator did not know, but plaintiff did not run); he saw plaintiff wave when he was "about the center of the northbound tracks" and the streetcar was about 25′ away; plaintiff had reached the last rail when he was struck, in fact, he was even a "little bit east of it" and "just a matter of another foot or foot and a half, there wouldn't have been any accident. * * * Q. When you were back a half a block, did you know an accident was going to happen? A. No, sir. Q. Why did you apply your brakes just as hard as you could and start ringing your bell? A. Well, you never know what might happen. Q. Was that why you did it? A. That's why I do it all the time. Q. Is that why you did it on this occasion? A. Yes, sir." The streetcar was stopped within 12′ after the collision; plaintiff was knocked due east and was lying on Broadway, parallel with the rear (center) exit door.

Defendant contends that, while there was evidence of stopping distances at various speeds, "there was a total failure of proof of the ability of the defendant to slacken the speed of its streetcar and avoid the collision after plaintiff came into a position of imminent peril." Defendant says that the zone of imminent peril "did not and could not have commenced until plaintiff was unable, by his own efforts, to stop short of the path of the approaching streetcar * * * until plaintiff was within one step of the (west) overhang of the streetcar, * * * 4½′ west of the west (first) rail of the

northbound tracks." However, this argument is based upon the assumption that there was no evidence from which the jury could infer that plaintiff's obliviousness to danger should not have been apparent to the operator before plaintiff reached that point. The rule for which defendant contends does not so limit the zone of imminent peril in the instance of an oblivious plaintiff moving toward, and apparently intending to move into, the path of a moving vehicle. Wright v. Osborn, 356 Mo. 382, 201 S. W. 2d 935, 940; Woods v. Kurn, (Mo. App.) 183 S. W. 2d 852, 855; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S. W. 2d 1000, 1003. Contrast Yeaman v. Storms, 358 Mo. 774, 217 S. W. (2d) 495, 498. "A person about to go upon a railroad crossing is in a position of peril when he is oblivious to the approaching [698] train, and by his actions and conduct it is apparent to a reasonable, prudent trainman that he is oblivious to the approaching train, and if after getting into a position of peril, the operators of the engine, having the means at hand to avoid the collision, fail to do so, a prima facie case is made under our humanitarian doctrine." Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304, 307. See Rowe v. Kansas City Public Service Co., (Mo. App.) 248 S. W. 2d 445, 450.

"Just when one, under the evidence in any particular case, comes into and is in a position of imminent peril is a question for the jury to determine." Harrington v. Thompson, (Mo.) 243 S. W. 2d 519, 525. In the instant case, while the imminent peril zone is very narrow, the jury could have reasonably found that that zone began at some point west of the streetcar's west overhang.

Assuming that the jury believed that the imminent peril zone began, as contended by defendant, 4½' west of the west rail, plaintiff made a submissible case as to failure to slacken. This is not a case wherein the operator's first view of plaintiff pedestrian was when the latter suddenly darted into the path of the moving vehicle and the collision could not have been avoided. Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S. W. 2d 200; Young v. St. Louis Public Service Company, No. 42,255, 250 S. W. 2d 689, decided July 14, 1952. Or where the operator, with an unobstructed view, failed to observe the apparently oblivious pedestrian moving toward the vehicle's path and apparently intending to continue. Wright v. Osborn, 356 Mo. 382, 201 S. W. 2d 935. Here, the experienced operator admitted that he first saw plaintiff when the streetcar was 150' away; saw him start across the loading zone toward the place where passengers boarded northbound cars; saw him walk due east toward the northbound tracks without again looking toward the streetcar, and watched him walk "from that first step till the time the accident happened"; he saw plaintiff start across when the streetcar was 150' away and began to ring the bell "to give him a warning that I was coming along there," and to push

down on the brakes because "you never know what might happen." Thus, the operator's own testimony reflected his consciousness of plaintiff's presence and demeanor.

Walking about 3' a second, plaintiff reached the point of imminent peril 4½' west of the first rail, in about 3 seconds. He was in imminent peril during the next 3 seconds while he was walking the approximately 10' to the last rail. At 25 m.p.h., the streetcar was 109.98' away 3 seconds before the impact. Allowing for reaction time ¾ of a second (defendant's evidence), the streetcar was 82.48' away 2¼ seconds before the impact. Plaintiff needed only ⅓ of a second to clear the streetcar's east overhang. If the streetcar had been ⅓ of a second or 12.22' away when plaintiff stepped over the last rail, he would have been out of danger. The jury could, without resort to speculation and conjecture, reasonably infer that in those 2¼ seconds and 82.48', after plaintiff was in imminent peril, the speed of the streetcar could have been slackened sufficiently to have been 12.22' away when plaintiff was stepping over the last rail.

Upon the evidence of both parties, this is an "almost escaping case." Evidence, either direct or circumstantial, is necessary that, in the time and space available, the speed of the streetcar could have (not "might have") been sufficiently slackened to have enabled plaintiff to have emerged from the imminent peril zone. Hunt v. Chicago, M. St. P. & P. R. Co., 359 Mo. 1089, 225 S. W. 2d 738, 741. "However, it is at the same time recognized that there are many situations where the facts speak for themselves without the aid of expert evidence, as where the evidence shows that the plaintiff's vehicle had but barely failed to get in the clear before the occurrence of the collision, so that only the least additional time would have enabled the plaintiff to make his escape. Sometimes, as in this case, it may be that there was no opinion evidence to show the precise amount of slackening possible within the time and distance available, while in other cases, the record may be lacking in opinion evidence upon the question of the amount of time that would have been required for the plaintiff's vehicle to have been driven clear of [699] the approaching train. But in whichever respect definite evidence may be lacking, if it none the less appears that but an instant more would have taken the plaintiff out of danger, and that the slightest slackening of the speed of the train would have been enough to have prevented the collision, the whole situation may afford substantial evidence from which the jury may be entitled to find, without resort to speculation and conjecture, that the failure to slacken the speed of the train was the proximate cause of the ensuing injury." Woods v. Kurn, (Mo. App.) 183 S. W. 2d 852, 856. Contrast Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S. W. 2d 696, 698.

The operator's testimony was that plaintiff was stepping over the last rail, and needed only about 1' 6", and "just a matter of another foot or foot and a half, there wouldn't have been any accident." As in Diel v. St. Louis Public Service Co., 238 Mo. App. 1046, 192 S. W. 2d 608, 611: "Plaintiff lacked only a step of clearing the path of the car when he was struck. It is evident that the motorman, if exercising the care and watchfulness required of him under the humanitarian rule, would have become aware of plaintiff's intention to cross the track in time to have avoided striking him by stopping the car or checking its speed. The slightest checking of the speed of the car would have saved plaintiff from harm." See also: Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304, 307; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S. W. 2d 1000, 1003.

We hold that plaintiff made a submissible case on failure to slacken.

█ Defendant next contends that plaintiff's Instruction No. 2 was erroneous in two particulars. The instruction was (the italics are ours):

"The court instructs the jury that under the law of the State of Missouri governing this case, it was the duty of the defendant's operator to exercise ordinary care in the operation of the streetcar at the time and place mentioned in evidence; therefore, if you find and believe from the evidence that *on the occasion in question plaintiff was crossing the defendant's double set of tracks at the place mentioned in evidence, and that while crossing said tracks the plaintiff became and was in a position of imminent peril and danger of being struck and injured* by defendant's northbound streetcar mentioned in evidence, and if you further find that the operator of said streetcar saw, or, in the exercise of ordinary care, could have seen the plaintiff in such position of imminent peril, and if you further find that thereafter, by the exercise of ordinary care and with the means and appliances then at hand, and with safety to himself and his passengers, the said operator could have slackened the speed of said streetcar and thus and thereby have avoided striking the plaintiff, if so, *and if you further find that the operator thereof failed to exercise ordinary care to slacken the speed of his said streetcar and was negligent, and that such negligence, if any, directly caused said streetcar to strike plaintiff whereby plaintiff received injuries mentioned in evidence, if so, then your verdict must be in favor of the plaintiff and against the defendant,* St. Louis Public Service Company, a corporation, and this is true even though you may further find that the plaintiff, himself, was negligent in going upon the track over which such streetcar was being operated at the time and place in question."

We overrule the defendant's assignment as to the language first italicized—that it erroneously authorized the jury to find that plain-

tiff was in imminent peril while crossing the southbound track. From what we have hereinbefore said, it is evident that the instruction properly authorized the jury to find that, while crossing the defendant's double set of tracks, plaintiff became and was in a position of imminent peril and danger of being struck and injured. Diel v. St. Louis Public Service Co., 238 Mo. App. 1046, 192 S. W. 2d 608, 611; Newman v. St. Louis Public Service Co., (Mo.) 244 S. W. 2d 45, 48-49.

However, we sustain defendant's assignment that the portion of Instruction No. 2 last italicized "does not relate back [700] to the preceding part of the instruction so as to require a finding that the failure to slacken occurred after imminent peril arose." See the dissenting opinion in White v. Kansas City Public Service Co., (Mo. App.) 140 S. W. 2d 711, 713. Plaintiff concedes that in Harrow v. Kansas City Public Service Co., (Mo.) 233 S. W. 2d 644, and White v. Kansas City Public Service Co., 347 Mo. 895, 149 S. W. 2d 375, a similarly worded instruction was held prejudicially erroneous because it permitted the jury to consider the defendant's antecedent negligence. (We note that the instant instruction hypothesizes the failure of the operator "to exercise ordinary care" to slacken speed as the proximate cause of plaintiff's injuries; and that the instruction fails to require a finding that the operator did *in fact* fail to slacken speed and that such failure was the proximate cause of the injuries.)

However, plaintiff says, the error here was cured by other instructions, given at defendant's request, which defined "imminent peril" and which directed a defendant's verdict upon the hypothesization that "at the time plaintiff entered a position of imminent peril, it was then too late for the operator, in the exercise of ordinary care, with the means and appliances at hand, consistent with the safety of the passengers * * * to have slackened the speed and thus and thereby have avoided striking the plaintiff." Such instructions did not cure the error in Instruction No. 2, plaintiff's only instruction purporting to cover the whole case and directing a plaintiff's verdict. It contained the positive misdirection that plaintiff could recover for defendant's antecedent negligence, irrespective of plaintiff's contributory negligence. And such misdirection cannot be cured by an instruction given by defendant. State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984, 987. See again Harrow v. Kansas City Public Service Co., supra. And contrast Wright v. Osborn, 356 Mo. 382, 201 S. W. 2d 935, 940. And, as in Harrow v. Kansas City Public Service Co., supra, the instant circumstances differ from those in Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S. W. 2d 681, cited by plaintiff.

We need not rule defendant's assignment as to "verbal instructions." If not waived by defendant's failure to make timely

454

objection, the error, if any, is not one of which defendant may complain as it was beneficial to defendant.

 The trial court's order granting a new trial on the damages issue was the equivalent to a holding that the amount of the verdict was against the weight of the evidence, a matter in which the trial court has a wide discretion; we do not weigh the evidence; our duty here, viewing the evidence most favorably to defendant (i.e., in a light most favorable to sustension of the trial court's ruling) is to determine whether the trial court abused its discretion in ordering the $7500 remittitur. Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S. W. 2d 426, 431.

 Plaintiff, a 28 year old laborer, had been in good health and physical condition. He had passed a physical examination for the job he had held for 3½ years before the accident. Plaintiff said that: he was knocked unconscious and "came to his senses" 5½ days later in the hospital; he had pain in his head, back, right shoulder and right leg, and was unable to see out of his right eye; he was in the hospital two weeks and then was confined to his bed at home (length of time not stated); he could not go back to work for 9 or 10 months; during that time he had pain in his back, leg and shoulder, but these were all "healed up" at trial time though "his back and shoulder still hurt when he exerted himself"; his head still hurts when he "gets hot, throbs and pains me kind of * * *. I have dizzy spells, don't last any longer than 3 or 4 minutes, something like that, but the headaches last sometimes 30 minutes to an hour or more * * *. I have the headaches probably 3 or 4 times a day * * * the dizzy spells don't come too often—when I exert myself and get hot * * * or when I am bending over and move my head from side to side * * * and I have more dizzy spells in hot weather * * * I am nervous * * * and its late at night before I can rest" (sleep).

There was no conflict in the medical evidence that: Plaintiff remained unconscious [701] for 5½ days; he sustained bruises on his head, back, right shoulder and right leg, and that he had fully recovered from these minor injuries (at the trial, plaintiff's counsel stated that plaintiff was not making any claim that these injuries were permanent); he sustained: (a) An optic atrophy and complete and permanent loss of sight in the right eye (with a moderate strabismus and accompanying loss of depth perception); (b) a fracture of the temporal bone on the right side (above the right eyebrow); and (c) a brain concussion.

The sharp conflict in the medical testimony was as to the seriousness of the concussion. All of the doctors had examined plaintiff at various times. In the opinion of plaintiff's doctors, the concussion was severe enough to, and did, damage the brain cells and thus cause the headaches and dizzy spells, and plaintiff would suffer

therefrom all the rest of his life. On the other hand, defendant's doctors found no indication of brain damage or ''other findings, which would point to any damage to the central nervous system.'' Conceding that a longer period of unconsciousness indicates greater concussion severity, that 5½ days unconsciousness could produce serious brain concussion, and that headaches and dizzy spells are symptoms of a concussion, defendant's doctors were unable to find any objective symptoms of damage to the brain cells or anything to cause them to suspect that the brain had been permanently injured. They ''took plaintiff's word for it'' that he did have headaches and dizzy spells; and agreed that, if he did have, such headaches and dizzy spells sometimes last several years.

When injured, plaintiff was earning $57.60 a week. He was unable to work for 9 or 10 months after the accident. For the first 13 weeks, he received $30 per week from group insurance. Sometime during that 9 or 10 months, plaintiff spent 3 months completing a training course under the ''G. I. Bill of Rights''; apparently he was paid $1455 during those 3 months. Thereafter, he was refused employment by his former employer because he could not pass a physical examination. He then went to work for the company for which he was working at trial time; no physical examination was necessary; he usually worked 5 days a week, sometimes 5½, and his average weekly earnings were $32. His work consisted of removing cardboard boxes from a machine and stacking them.

There was no evidence that plaintiff had incurred any hospital bills. He had incurred doctors' bills but, except in one instance ($25 each for 2 examinations and $200 for time in testifying), the amounts thereof were not shown.

Plaintiff's loss of earnings to trial time was undisputed. In his brief, he computes these lost earnings at approximately $2500. Defendant does not challenge that figure.

As stated, the existence and permanency of plaintiff's injuries, other than those to his right eye, were squarely challenged. As to some of these other injuries, the only evidence was plaintiff's own testimony. He testified as to symptoms which were subjective only and all medical expert opinions were based upon the assumption that plaintiff had dizzy spells and headaches. The trial court observed plaintiff and the doctors and heard them testify. See Nix v. Gulf, Mobile & Ohio. R. Co., 362 Mo. 187, 240 S. W. 2d 709, 714. The trial court, in a position to test the credibility of the witnesses and to weigh the evidence, could well have doubted that plaintiff actually experienced such spells and such headaches, or believed that plaintiff had accentuated both their frequency and their severity. The trial court was not required to accord full weight to plaintiff's testimony. See Steckdaub v. Sparks, (Mo.) 231 S. W. 2d 160.

However, the nature and permanency of the injuries to plaintiff's right eye were undisputed. It was also conceded that he sustained a right temporal bone fracture and a brain concussion. Determination of these matters did not involve weight of evidence or credibility of the witnesses. Assuming that the trial court found that the weight of the evidence was against plaintiff as to the extent and permanency of the plaintiff's other injuries, the damages issue became: Where plaintiff's undisputed evidence showed a $2500 loss of earnings [702]. to trial time and approximately 50% impairment in earning capacity, was $25,000 excessive for an optic atrophy and complete and permanent loss of an eye (with moderate strabismus and accompanying loss of depth perception)?

We believe that, under our decisions, $25,000 is not excessive. In 1930, this court held that $30,000 was, and $20,000 was not, excessive for the loss of sight in one eye (coupled with permanent injury to the other eye and impaired hearing in one ear). Cunningham v. Doe Run Lead Co., (Mo.) 26 S. W. 2d 957. And in 1947, we held that $40,000 was, and $30,000 was not, excessive for the loss of sight in one eye (coupled with "remote possibility" of removal of the injured left eye "which may affect the right eye to some extent," and "especially the item of loss of earning capacity"). Meierotto v. Thompson, 356 Mo. 32, 201 S. W. 2d 161, 168. See 25 C.J.S., Damages, Sec. 198, p. 977, and Annos.: 46 A.L.R. 1230, 1282; 102 A.L.R. 1125, 1258; and 16 A.L.R. 2d 3, 130. Viewing the evidence in the light most favorable to upholding the action of the trial court, we may not say that such evidence affords reasonable and substantial support for the trial court's order of remittitur. See Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S. W. 2d 426, 431, 432.

Under Sec. 512.160, we may "award a new trial or partial new trial * * * or give such judgment" as the trial court "ought to have given, as to the appellate court shall seem agreeable to law. Unless justice requires otherwise the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears." As Instruction No. 2 was prejudicially erroneous, defendant is entitled to a new trial as to its liability. And plaintiff is entitled to have set aside the order granting a new trial on the damages issue. And, as we have ruled adversely to defendant its contentions as to excessiveness of verdict, and as defendant does not claim that the error in Instruction No. 2 affected the damages issue, we should not award a new trial on that issue. See Brown v. Reorganization Inv. Co., 350 Mo. 407, 166 S. W. 2d 476, 484; Woods v. Chinn, (Mo. App.) 224 S. W. 2d 583, 587.

Therefore, the order granting a partial new trial is reversed and the cause is remanded with directions: To set aside, in its entirety, the judgment entered on the verdict; to reinstate the verdict as to

the amount of plaintiff's damages but to hold judgment thereon in abeyance; to retry the liability issue only; and, if defendant be found liable, to enter judgment against it for $25,000, but if defendant be found not liable, to enter judgment in its favor. *Van Osdol* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. *Hyde, P. J.*, concurs in separate opinion; *Hollingsworth* and *Dalton, JJ.*, concur in result and in separate opinion of *Hyde, P. J.; Conkling, J.*, concurs in result.

■ HYDE, P.J. (concurring).—Judge Lozier's opinion in holding that both parties may appeal, from the order granting a new trial on the issue of damages only, follows the spirit of our code, namely that "it shall be construed to secure the just, speedy, and inexpensive determination of every action." (Sec. 506.010; all statutory references are to RSMo 1949, VAMS.) However, I do not think the defendant's right of appeal, in such a case as this, should be limited to the fortuitous circumstance of the Court ordering a new trial of its own initiative, which would have to occur "not later than 30 days after the entry of judgment." (Sec. 510.370)

It is provided by Sec. 512.020 that "any party to a suit aggrieved * * * may take his appeal * * * from any order granting a new trial." The order herein involved (whether considered as being made on the authority of the Court's own initiative or on the authority of defendant's motion for a new trial) was an order granting a new trial and, therefore, was appealable [703] by anyone aggrieved by it. Thus the decisive question as to defendant's right to appeal herein is: was defendant aggrieved by this order?

In Fenton v. Thompson, 352 Mo. 199, 176 S. W. (2d) 456, we approved statements from Kinealy v. Macklin, 67 Mo. 95, and Scott v. Parkview Realty & Imp. Co., 241 Mo. 112, 145 S.W. 48, as follows: "A party cannot be said to be 'aggrieved' unless error has been committed against him"; and "a party cannot appeal from a judgment that is wholly in his favor, one that gives him all he asks; but he may appeal from a judgment that gives him only a part of what he sues for." In the Fenton case the Court permitted a voluntary dismissal by the plaintiff after the case had been submitted to the jury. The Fenton case was decided under the old code but in upholding defendant's right to appeal from this judgment of dismissal, we said: "Appellant here complains of a final judgment of dismissal of a cause instituted against him. The judgment of dismissal, not being 'with prejudice,' or on the merits, was necessarily 'without prejudice.' While the judgment on its face appears to be in appellant's favor, yet if, under the circum-

stances shown by the record, the appellant was entitled, as a matter of law, to a judgment of dismissal 'with prejudice' or on the merits, barring a further prosecution of the cause, and, if the judgment entered does not so provide, then error, in prejudice of appellant's substantial rights, has been committed against him, in that he did not receive all to which he was legally entitled.'' (See also State ex rel. Consumers Public Service Co. v. Public Service Commission, 352 Mo. 905, 180 S. W. (2d) 40; State ex rel. Yale University v. Sartorius, 349 Mo. 1039, 163 S. W. (2d) 981; St. Louis & S.F.R. Co. v. Evans & Howard Fire Brick Co., 85 Mo. 307.)

I think defendant's situation in this case is very similar. It is true that defendant asked for a new trial but it asked for a complete new trial on all the issues involved and alleged error on the issue of its liability. It did not want a new trial on the measure of damages only, which would be based on a final adjudication that it was liable to plaintiff. Defendant was contending for a retrial of the issue of its liability on the ground there was prejudicial error committed against it (which our opinion finds to be true) in determining that issue. It is, therefore, my conclusion that defendant was ''aggrieved'' by the order of the trial court granting a new trial on damages only and would be entitled to appeal even if the order were made more than 30 days after the entry of judgment and based on an assignment in defendant's motion for new trial. A defendant does not get what he asks for by such an order and, if he is entitled to a new trial on the issue of liability because of error committed against him, the order does not give him all to which he is legally entitled. In this situation, error, in prejudice of his substantial rights, has been committed against him. The result of refusing an appeal in these circumstances would usually be harmful to both parties. There could be the delay and expense of a trial on the measure of damages which might be a useless waste of time and money, because on appeal by defendant from the final judgment thereafter entered as to both liability and damages, we would have to reverse the judgment and order another new trial at least on the issue of liability. In any event, the expense and delay incident to another judgment and a new appeal would be involved. This is the very situation that was intended to be avoided when the statute was amended to provide for an appeal from an order granting a new trial.

''The motion for new trial is the basic after trial motion under our Code to preserve trial errors for appellate review.'' Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S. W. (2d) 989. I think it is in harmony with our ruling in that case and the provisions of Sec. 512.160 for this Court to consider, on defendant's appeal herein, all of the alleged procedural errors raised in its motion for new trial; and to decide them for the purpose of

giving or directing the entry of the correct judgment required to dispose of the case. Even under the old code, we held that on appeal from an order granting a new trial the "case is for review [704] the same as if here after final judgment" with authority, for the purpose of lessening expense and ending litigation, to "remand the cause and direct the trial court as to a disposition of the case." (Cole v. St. Louis-S.F. Ry. Co., 332 Mo. 999, 61 S. W. (2d) 344; For cases so holding under the new code, see Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S. W. (2d) 426; Nelson v. Kansas City, 360 Mo. 143, 227 S. W. (2d) 672; Atlantic Nat. Bank v. St. Louis Union Trust Co., 357 Mo. 770, 211 S. W. (2d) 2.) I, therefore, concur in the opinion of LOZIER, C., as to the ruling that defendant had the right of appeal and as to the disposition of the case therein ordered. *Dalton* and *Hollingsworth, JJ.*, concur.